IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **GUILLERMO BENITEZ** <br> 8609 11th Avenue <br> Silver Spring, Maryland 20903 <br><br> **PLAINTIFF** <br><br> v. <br><br> **KRAMERBOOKS & AFTERWORDS INC.** <br> 1517 Connecticut Avenue, NW <br> Washington, D.C. 20036 <br> **Serve on resident agent:** <br>     Carol L. O'Riordan, Esq. <br>     1314 19th Street NW <br>     Washington D.C. 20036 <br><br> **Henry Posner** <br> 1517 Connecticut Avenue, NW <br> Washington, D.C. 20036 <br><br> **DEFENDANTS** | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | <br><br><br><br><br><br> **Civil Action Number:**_____ <br><br><br><br><br> **Jury Trial Requested** |

## COMPLAINT

Plaintiff Guillermo Benitez, a former employee of the Defendants Kramerbooks & Afterwords, Inc. ("Kramerbooks") and individual Defendant Henry Posner, respectfully submits this Complaint alleging that Defendants: (1) intentionally and willfully violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), and the D.C. Minimum Wage Act, D.C. Code § 32-1001, *et seq;* and (2) committed the tort of negligent misrepresentation against Plaintiff and/or in the alternative caused Plaintiff to reasonably rely to his detriment on the Defendants' promises that Plaintiff could return to full-time work as a cook after visiting his family in El Salvador.

Plaintiff brings the overtime claim through a collective action on behalf of himself and all

similarly situated employees under the FLSA, see 29 U.S.C. § 216(b), and under the law of the District of Columbia, see D.C. Code § 32-1012(b).

## STATEMENT OF FACTS

### I. PLAINTIFF

1. Plaintiff Guillermo Benitez is an adult male resident of Maryland.

2. Plaintiff worked for Defendants as a cook for several years and at least since 2009.

3. As a cook for Defendants, Plaintiff worked in the District of Columbia at their café.

4. Plaintiff worked for Defendants at their Dupont Circle, Washington D.C. bookstore and café, with the trade name of Kramerbooks & Afterwords Cafe.

5. Plaintiff worked in a full-time capacity for Defendants and often worked in excess of forty hours per week.

6. Pursuant to the FLSA, Plaintiff institutes this civil action for actual damages, liquidated damages, statutory penalties, restitution, and attorney's fees and the costs of this action against Defendants for multiple violations of the overtime provision of the FLSA, 29 U.S.C. §§ 207 and 216(b).

7. Plaintiff seeks liquidated damages under the FLSA, 29 U.S.C. § 216(b); and under D.C. Code § 32-1012(a).

8. Plaintiff seeks attorney fees under the FLSA, 29 U.S.C. § 216(b); and under D.C. Code § 32-1012(c).

9. Plaintiff, at all times pertinent hereto, has been a non-exempt employee within the meaning of the FLSA and the D.C. Code, and the implementing rules and regulations of the FLSA and the D.C Minimum Wage Act.

10. Plaintiff is filing FLSA and D.C. Minimum Wage Act overtime claims on behalf of himself and other similarly situated employees under FLSA 29 U.S.C. § 216(b) and D.C. Code § 32-1012(b).

11. Plaintiff was not compensated at the proper overtime rate for hours worked in excess of forty (40) hours per week for several years from at least August 2009 until sometime in 2012.

## II. DEFENDANTS

12. Defendants operate a for-profit business in the District of Columbia.

13. Defendants hold an active D.C. business license number 65990006.

14. Defendants' combined gross revenues exceeded $500,000.00 for the relevant time period for determining FLSA coverage.

15. Defendant Kramerbooks is subject to the FLSA.

16. Defendant Henry Posner owns and operates Kramerbooks, and as an owner and operator established, managed, supervised, and administered the terms and conditions of Plaintiff's employment and the employment of similarly situated employees.

17. Defendant Posner is an owner of Defendant Kramerbooks.

18. Defendant Posner is an executive officer of Defendant Kramerbooks.

19. Defendant Posner has management duties at Defendant Kramerbooks.

20. Defendant Posner were involved in assigning work to Plaintiff and similarly situated employees directly as well as through agents.

21. Defendant Posner had the power and authority to discipline Plaintiff and similarly situated employees.

22. Defendant Posner exercised authority over the terms and conditions of Plaintiff's employment, over his hiring and firing, and over how much and in what way Plaintiff was paid, as well as over the said conditions of similarly situated employees.

23. At all times herein mentioned, the acts and omissions of the Defendants, and each of them, concurred and contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the complaints, injuries and damages alleged herein.

24. At all times herein mentioned, the Defendants, and each of them, approved of, condoned and/or otherwise ratified each and every one of the acts or omissions of the other Defendants complained of herein.

25. At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and every one of the other Defendants, thereby proximately causing the damages as herein alleged.

26. Defendants employed and paid the Plaintiff as their employee.

27. Defendants are employers within the meaning of the term of the Fair Labor Standards Act, 29 U.S.C. § 203(d) and D.C. Code § 32-1002.

28. Defendants were subject to and are subject to the FLSA and the D.C. Code.

29. Defendants engage in interstate commerce.

### III. UNLAWFUL ACTS OF DEFENDANTS

30. Defendants, beginning as far back as August 2009 and continuing through some part of 2012, instituted a policy where Defendants paid employees zero overtime.

31. Defendants zero overtime policy affected cooks, dishwashers, and prep cooks, among others, at Defendants' café and bookstore.

32. Defendants paid the employees weekly.

33. Defendants' café in a typical month employed around 30 to 40 employees in food preparation, dishwashing, bussing tables, bar staff, and wait staff

34. Defendants also employed bookstore staff, managers, and others.

35. Defendants implemented its zero overtime policy through paying its staff with two checks each week for hours worked during each week.

36. Defendants paid Plaintiff with two checks per week.

37. Defendants routinely issued paychecks showing the itemization of applicable federal and state wage deductions and other withholdings for up to 40 hours of work per week.

38. These customary employment paychecks were issued with the help of payroll company ADP.

39. For the purposes of this Complaint, these ADP customary payroll checks will be called a "payroll check."

40. Defendants in addition issued Plaintiff and similarly employees a second check without any withholdings or deductions, which for the purposes of this Complaint will be called a "straight check."

41. This straight check routinely would be issued for the remainder of an employee's earned hours above 40 hours worked per week.

42. This straight check was not issued to Plaintiff through ADP.

43. This straight check was not issued to Plaintiff with the help of ADP or any third party to Defendants.

44. Defendants intended their straight check to appear to be something other than a payroll check.

45. A small sample of Defendants' weekly pay issued to Plaintiff is attached to this Complaint as <u>Exhibit A</u>.

46. Plaintiff often wrote on his straight check the number of hours worked that week represented by that check, and this writing was accomplished around the same time as the check was issued by Defendants.

47. Plaintiff and the similarly situated employees did not get paid the required overtime rate when working more than 40 hours in a work week.

48. Defendants are not governmental entities.

49. Defendants have no union or collective bargaining agreement with employees.

50. Defendants routinely and systematically failed to pay Plaintiff and other similarly situated employees for earned overtime, in violation of the FLSA and DC Minimum Wage Act.

51. Defendants' failure to properly pay Plaintiff and others for overtime and regular time was intentional and willful.

52. Defendants never obtained legal advice nor counsel that its overtime pay practices and / or policies were compliant with state and federal wage-hour laws.

53. Defendants never obtained any written guidance from the U.S. Department of Labor concerning Defendants' pay practices and policies..

54. Defendants knew that its employees, including Plaintiff, were and are entitled to overtime pay when s/he works more than 40 hours in a workweek.

55. Defendants knew that no exemption applies to these employees, including Plaintiff.

56. No exemption from overtime wages applied to or now applies to Plaintiff's employment with Defendants.

57. No exemption from overtime applies or applied to Plaintiff when he worked or works more than 40 hours in a workweek for Defendants.

58. Defendants had a uniform, company-wide policy of not providing overtime wages for its their hourly employees, until approximately sometime in 2012.

59. There are numerous employees similarly situated to Plaintiff owed overtime wages.

60. Current employees are concerned about losing their job and further retaliation if they seek overtime wages owed to them.

61. Proceeding as a collective action on the overtime claims will serve the remedial purposes of the applicable overtime laws and reduce litigation expense and cost.

## JURISTICTION AND VENUE

62. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because his claim arises under federal law, FLSA, 29 U.S.C. § 216(b), and pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) for the closely related District of Columbia law overtime claim.

63. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because Defendant Kramerbooks is located in the District of Columbia and all events or omissions giving rise to the claims of this Complaint occurred in the District of Columbia.

64. Personal jurisdiction and venue are proper in regard to individual Defendant Henry Posner, Owner of Kramerbooks, because his actions complained of occurred in the District of Columbia, because he himself works at least partially in the District of Columbia, and because his actions and decisions complained of affected employees working in the District of Columbia.

## **VIOLATIONS OF LAW**

### **Count I– FLSA Claim for Owed Overtime / Willful Violations (Collective Action)**

65. All allegations of the Complaint are expressly incorporated herein.

66. Plaintiff and similarly situated employees are entitled to overtime pay under the Fair Labor Standards Act, 29 U.S.C. §§ 207, 216(b).

67. Plaintiff is bringing this claim for overtime wages on his own behalf.

68. Plaintiff is seeking that this Court recognize this civil action as a collective action so that other employees can obtain overtime compensation owed to them.

69. Defendants failed to pay Plaintiff and similarly situated employees at the rate of time-and-one-half for hours worked over forty in a workweek.

70. Defendants violated the provisions of the Fair Labor Standards Act by failing and refusing in a willful and intentional manner to pay Plaintiff all overtime compensation due to him under the FLSA and its implementing regulations.

71. By reason of the aforesaid violations of the FLSA, Defendants are liable to Plaintiff and similarly situated employees in an amount equal to the unpaid overtime, unpaid overtime penalties/liquidated damages, all other applicable penalties, attorney's fees and costs, and pre-and post judgment interest.

72. <u>Relief requested</u> - Plaintiff requests that: (a) Defendants be ordered to pay wages to Plaintiff for all overtime hours; (b) liquidated damages be assessed against the Defendants; (c) Plaintiff be awarded pre- and post-judgment interest; and (d) Plaintiff be awarded his attorney's fees and costs. Plaintiff also requests the Court permit this civil action to proceed as a collective action for Plaintiff and all similarly situated employees under FLSA, § 216(b).

**Count II – Violations of the D.C. Minimum Wage Act (Collective Action)**

73. All allegations of this Complaint are incorporated fully in this Count.

74. Plaintiff was required to work in excess of forty (40) hours during a workweek.

75. Defendants willfully violated the provisions of the D.C. Code § 32-1003(c) by failing to compensate Plaintiff for overtime hours worked, defined as hours in excess of forty (40).

76. As a result of the unlawful acts of Defendants, Plaintiff has been deprived overtime in amounts to be determined at trial, and is entitled to recovery of such amounts, plus interest and penalties thereon, attorney's fees, and costs.

77. <u>Relief requested</u> – Plaintiff requests that: (a) Defendants be ordered to pay wages to Plaintiff for all overtime hours; (b) liquidated damages be assessed against the Defendants; (c) Plaintiff be awarded pre- and post-judgment interest; and (d) Plaintiff be awarded his attorney's fees and costs. Plaintiff also requests the Court permit this civil action to proceed as a collective action for Plaintiff and all similarly situated employees under D.C. Code § 32-1012(b).

**Count III – Negligent Misrepresentation**

78. All allegations of the Complaint are expressly incorporated herein.

79. Plaintiff worked for Defendants for several years and was well-known by and on friendly terms with Defendants.

80. Plaintiff was an above average employee of Defendants.

81. Defendants have written a letter of reference stating that Plaintiff is a satisfactory employee.

82. During Plaintiff's employment by Defendants, Defendants on three occasions permitted Plaintiff to take multiple weeks of unpaid vacation to visit his family in El Salvador and return to his full-time position as a cook for Defendants.

83. During these leaves of absence, Plaintiff sought and obtained permission first to take a leave of absence, and sought and obtained a promise from Defendants that he could resume his job upon return.

84. Plaintiff took leaves of absence of around three to five weeks in (1) February 2010, (2) from around mid-December 2010 through mid-January 2011, and (3) from around December 2012 to January 2013.

85. Upon return from each leave absence mentioned above, Plaintiff resumed working for Defendants as a full-time cook.

86. Defendants called these leaves of absence vacations.

87. Defendants permitted co-workers of Plaintiff to take vacations lasting multiple weeks during Plaintiff's employment, much like Plaintiff's prior vacations.

88. During Fall 2013, Defendants encouraged employees to take "vacations."

89. Defendants provided employees with vacation pay.

90. Defendants required employees seeking these vacations to request vacations by letter.

91. Around September 2013, Plaintiff, by signed letter, asked for a vacation of about one month in duration from Defendant Kramerbooks and individual Defendant Henry Posner.

92. At the same time, Plaintiff asked Defendants' agent and manager Dennis (hereinafter "Manager Dennis") for a vacation of about one month in duration through a second signed version of the same letter.

93. Defendant Posner told Plaintiff that whatever Manager Dennis determined was the final decision of Defendants.

94. Plaintiff, after submitting a letter request for vacation and in September 2013, asked Manager Dennis if his vacation was approved.

95. Manager Dennis orally approved Plaintiff's requested vacation in a face-to-face meeting at the worksite.

96. Manager Dennis specifically asked Plaintiff when Plaintiff would be returning, and Plaintiff responded that Plaintiff would be available to work on Monday, January 27, 2014.

97. Manager Dennis approved, verbatim, a "vacation."

98. Manager Dennis and Plaintiff, based on their specific conversation as well as upon the customary practice of Defendants, understood that Defendants' approval included a promise that Plaintiff would return from a vacation to his full-time position.

99. Plaintiff told Manager Dennis during this conversation that if Manager Dennis did not approve the vacation that Plaintiff would not go.

100. Manager Dennis assured Plaintiff of Defendants' approval.

101. In November 2013, Manager Dennis put on his calendar that Plaintiff was to work on Monday, January 27, 2014.

102. Plaintiff saw this calendar notation showing Plaintiff's return to work date of Monday, January 27, 2014.

103. Plaintiff's co-workers and other managers of Defendants saw this calendar notation showing Plaintiff's return to work date of Monday, January 27, 2014.

104. Manager Dennis is the agent of Defendant Kramerbooks.

105. Manager Dennis is the agent of Defendant Henry Posner.

106. Plaintiff asked permission before scheduling this vacation leave from work.

107. After Defendants' approval, Plaintiff scheduled his vacation for approximately December 19, 2013, until and before January 27, 2014.

108. On December 13, 2013, Defendants issued to Plaintiff Check No. 114796 for vacation pay totaling $1,224.00 as a result of Plaintiff's scheduled vacation.

109. Defendants mailed Plaintiff's vacation pay check to Plaintiff during Plaintiff's vacation.

110. Plaintiff scheduled his return to the United States from El Salvador for Saturday, January 25, 2014, two days before being responsible to report back to work.

111. On Sunday, January 26, 2014, Plaintiff called Defendants and was told by Manager Dennis that Plaintiff was not on the work schedule for January 27, 2014, and for anytime thereafter.

112. Manager Dennis told Plaintiff that Defendant Posner took Plaintiff off of the work schedule.

113. During the week of Monday, January 27, 2014, Defendants did not schedule Plaintiff for work.

114. Around February 1, 2014, Plaintiff's sister, who speaks fluent English, called Defendant Posner, who informed Plaintiff's sister that Manager Dennis was the only person that could put Plaintiff back on the work schedule.

115. Defendant Posner, during this telephone call, also became angry and communicated this anger that Plaintiff, through his sister, had contacted Defendant Posner directly.

116. Shortly thereafter and around February 9, 2014, Plaintiff and his brother went to the restaurant to speak with Manager Dennis about working full-time for Defendants as a cook.

117. Manager Dennis offered Plaintiff employment of two days per week for the next week only, for about 15 hours total.

118. Plaintiff told Manager Dennis that he could not survive on such little work.

119. Plaintiff could not accept the part-time employment.

120. Plaintiff began searching for employment elsewhere.

121. Defendants were negligent in omitting and failing to inform Plaintiff that they would not hold Plaintiff's job available for him upon Plaintiff's return.

122. Defendants were negligent in omitting and failing to inform Plaintiff that their promise to hold his job for Plaintiff was subject to the contingencies of business.

123. Defendants were negligent in omitting and failing to inform Plaintiff that their promise to hold his job for Plaintiff was conditional on circumstances and/or conditional whatsoever.

124. Defendants made a false representation to Plaintiff they would hold his job open for him upon return.

125. Defendants knew their representation was false because they never intended to honor it, or because Defendants knew that the business outlook was uncertain in the near future.

126. Defendants had a duty to inform Plaintiff of their intentions and reasonable estimations because Plaintiff was a long-term employee.

127.      Defendants had a duty to inform Plaintiff of their intentions and reasonable

estimations because Plaintiff was granted such leave beforehand thrice, and Defendants

knew Plaintiff relied upon his job and would only take a vacation if Plaintiff could return

to his same job.

128.      Plaintiff's employment status and job security were a central and material issue in

the parties' relationship and communications.

129.      Plaintiff reasonably relied upon Defendants' representations and/or omissions

because Defendants had thrice beforehand made the same assurance, granted the same

permission, and honored the same permission, and kept the same assurance.

130.      Plaintiff reasonably relied on Defendants' representations and/or omissions

because Defendants customarily extended vacations to Plaintiff's co-workers.

131.      Plaintiff reasonably relied upon Defendants' representations and/or omissions

because Defendants made express representations granting Plaintiff vacation and assuring

Plaintiff could return to full-time work after the leave.

132.      Plaintiff relied to his detriment because he otherwise would have kept working

and not taken a leave of absence, but for Defendants' permission and assurance.

133.      Plaintiff relied to his detriment because since his return on January 25, 2014,

Plaintiff has not been able to secure full-time employment with Defendants or elsewhere

until March 26, 2014, and Plaintiff has suffered economic harm, loss of dignity, and

betrayal.

134.      Plaintiff has suffered anxiety and worry about supporting himself and his family

as a result of Defendants' conduct.

135. Defendants acted with callous disregard of Plaintiff when falsely representing to Plaintiff that he could take an unpaid leave of absence and return to his job.

136. Defendants are experienced employers who have managed Defendant Kramerbooks for over two decades.

137. Defendants, as experienced employers, could foresee the harm that they caused Plaintiff.

138. <u>Relief requested</u> – Plaintiff requests that he be awarded his lost wages and benefits, compensatory damages, and punitive damages from the Defendant Kramerbooks and individual Defendant Henry Posner. Plaintiff also seeks pre- and post-judgment interest, and all other relief, including equitable relief that the Court deems just and fair.

### Count IV – Promissory Estoppel

139. All allegations of the Complaint are expressly incorporated herein.

140. Defendant Kramerbooks, individual Defendant Henry Posner, and Defendants' agent Manager Dennis, around September 2013, represented to Plaintiff that he could take an extended leave of absence to visit family and friends and return to his full-time job as a cook, and promised to keep his job available to Plaintiff while Plaintiff was on leave.

141. Defendants called this leave a "vacation."

142. Plaintiff only scheduled his vacation after obtaining Defendant's express promise.

143. Plaintiff relied upon Defendants' promise to take this vacation, and otherwise would have not have done so.

Case 1:14-cv-00780 Document 1 Filed 05/07/14 Page 16 of 17

144. Plaintiff was reasonable in his reliance based upon Defendants' representations, their previous granting of vacation three times, and the personal and employment relationships among the parties spanning several years.

145. Defendants knew Plaintiff would rely on their representations based on the parties' employment history, and because Defendants told Plaintiff to rely on their promise.

146. Defendants did not restore Plaintiff to his full-time job as a cook or to any equivalent job upon Plaintiff's return date of January 27, 2014.

147. Plaintiff relied to his detriment because as a result Plaintiff experienced unemployment for about two months, and has suffered economic harm, loss of dignity, and betrayal.

148. Defendants should be bound to comply with their promise; otherwise Plaintiff will continue to suffer injustice.

149. Relief requested – Plaintiff requests Defendant Kramerbooks and individual Defendant Henry Posner be compelled to honor the promise to employ Plaintiff as a full-time cook, and to pay him for the lost wages and benefits that he has sustained because of their dishonored promise, or in the alternative make Plaintiff whole. In addition, Plaintiff seeks all other equitable relief that can be provided due to the harm done to Plaintiff.

Respectfully submitted,

*Daniel A Katz*
_____
Daniel A. Katz, D.C. Bar No. 447412
dkatz@ggilbertlaw.com
The Law Offices of Gary M. Gilbert
& Associates, P.C.
1100 Wayne Avenue, Suite 900
Silver Spring, Maryland 20910
Tel: (301) 608-0880; Fax: (301) 608-0881

Stephen B. Lebau,
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
Tel:(410) 296-3030; Fax: (410) 296-8660
*pro hac vice to be filed*

## REQUEST FOR JURY TRIAL

Plaintiff requests that a jury of his peers hears his case.

Respectfully submitted,

*Daniel A Katz*
_____
Daniel A. Katz
*Attorney for Plaintiff*